IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Savannah Riverkeeper, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>United States Army Corps of )<br>Engineers, et al., )<br>)<br>Defendants. )<br>)<br>_____ ) | Civil Action No. 9:12-610-RMG<br><br><br><br>**ORDER** |

The Court has before it three motions, one by Plaintiffs seeking to amend their complaint to add additional claims (Dkt. No. 37) and two by prospective intervenors, Savannah River Maritime Commission ("Maritime Commission") and the Georgia Ports Authority. (Dkt. Nos. 22, 30). The Court addresses each of these motions below.

**Factual Background**

This litigation arises out of the proposed Savannah River Expansion Project ("SHEP"), which involves the deepening of the Savannah River so that it can accommodate a larger class of ships anticipated to be constructed after the completion of the expansion of the Panama Canal in 2014. This particular lawsuit involves a challenge by Plaintiffs to the Defendants' failure to obtain a discharge permit for the project pursuant to the South Carolina Pollution Control Act, S.C. Code § 48-1-90 et seq., which Plaintiffs allege is required. (Dkt. No. 1-1). Defendants deny that such a permit is required and assert that they have applied for and obtained all required

environmental permits for the project. (Dkt. No. 33). In addition to this civil action, there is related litigation involving some or all of the parties in this action in the South Carolina Administrative Law Courts challenging permits issued to Defendants by the South Carolina Department of Health and Environmental Control ("DHEC") and in the original jurisdiction of the South Carolina Supreme Court addressing the respective legal authority of DHEC and the Maritime Commission concerning the permitting for SHEP.

This Court recently denied Defendants' motion to dismiss on justiciability grounds and issued a scheduling order to facilitate an early addressing of the central issue raised in Plaintiffs' complaint, the applicability of the South Carolina Pollution Control Act to SHEP. (Dkt. Nos. 20, 27). This expedited schedule was adopted in recognition that the present schedule for SHEP involves beginning the project in the Spring of 2013, and this created a need to address as early as possible the obligations of the Defendants for SHEP under South Carolina law. Prior to issuing the scheduling order, the original parties agreed that the issue raised by the Complaint was essentially legal in nature and could be briefed and ready for disposition by early November 2012.

### Maritime Commission's Motion to Intervene

As part of its filings with the Court in support of its motion to intervene as a plaintiff, the Maritime Commission submitted a proposed complaint which raises a number of issues not part of Plaintiffs' original complaint in this matter. These newly raised issues include the alleged obligation of Defendants to obey the orders of the Maritime Commission, the South Carolina Administrative Law Courts, and the South Carolina Supreme Court as well as a determination by this Court whether provisions of federal statutory law authorize the Defendants to disregard state

environmental enforcement provisions and permits. (Dkt. No. 22-1 at 15-22).

The Maritime Commission asserts that it has standing and a claim that shares with the main action common questions of law or fact sufficient to support permissive intervention in this action pursuant to Fed. R. Civ. P. 24(b)(1)(B). (Dkt. No. 22-12). Defendants opposes the Maritime Commission's intervention, arguing that it lacks standing or a sufficient legal interest to support permissive intervention. (Dkt. No. 35). Defendants further assert that the proposed complaint of the Maritime Commission vastly expands the legal issues before the Court and would unduly delay the resolution of this case.

For a party to have standing, it must demonstrate "injury in fact" that is "concrete and particularlized; the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiffs must further show that their injury is fairly traceable to the challenged action and it is likely their injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). It is well settled that a state may have sufficient interest in "preserving its sovereign territory" from environmental injury to support standing. *Massachusetts v. E.P.A.*, 549 U.S. 497, 518-19 (2007). *See also Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907) (Holmes, J.) ("[T]he state has an interest . . . in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air.").

In this matter, the Court has already found that Plaintiffs have sufficient injury to support standing. (Dkt. No. 20 at 6-7). The Maritime Commission, an agency of the State of South Carolina, has certain duties regarding "the navigability, depth, dredging, wastewater and sludge disposal, and related collateral issues in regard to the use of the Savannah River." S.C. Code §

54-6-10. Without determining the full scope of the Maritime Commission's duties, which is now being addressed by the South Carolina Supreme Court in an action in its original jurisdiction, it is quite clear at this stage of the litigation that the state agency has a vital interest in SHEP and in the potential applicability of the South Carolina Pollution Control Act. These interests are sufficiently concrete and imminent to support standing for the Maritime Commission in this action and there is sufficient evidence before the Court to satisfy requirements of causation and redressability.

The Court is also persuaded that the Maritime Commission satisfies the requirements for permissive intervention under Rule 24(b)(1)(B). Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention. Among the factors a Court should consider in passing upon a motion for permissive intervention includes (1) the timeliness of the motion; (2) the presence of a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice the original parties. *Backus v. South Carolina*, No. 3:11-cv-03120-HFF-MBS-PMD, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012). Moreover, where there is a "common question of fact, the court may allow intervention in the interest of judicial economy." *Id.*

In this matter, the Maritime Commission has made a timely motion to intervene and there exist common questions of law and fact which make permissive intervention appropriate. The issue of undue delay or prejudice does not arise regarding intervention to litigate the issues raised by the original complaint of Plaintiffs and the Court approves the Maritime Commission's intervention to address those issues.

Defendants make a valid objection, however, regarding the Maritime Commission's

efforts to introduce into this litigation issues beyond those contained in Plaintiffs' original complaint. The proposed Maritime Commission complaint (Dkt. No. 22-1) would vastly expand the factual and legal issues in dispute in this litigation and cause undue delay and prejudice to the original parties seeking a rapid adjudication of the South Carolina Pollution Control Act issue. In granting a party permissive intervention status, a District Court may condition that intervention on limiting the issues which may be raised by the intervening party and otherwise place reasonable restrictions on the scope of the litigation . 6 James Wm. Moore, et al., *Moore's Federal Practice* § 24.23 (3d ed. 2012). *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 373 (1987); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992); *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001).

Therefore, the Court specifically conditions the grant of permissive intervention to the Maritime Commission on restricting its ability to assert issues and claims beyond those raised in the original complaint. Therefore, the Court restricts at this time the litigation to addressing the issue of the obligation of Defendants to comply with the South Carolina Pollution Control Act, as asserted in the original complaint. Further, the Maritime Commission must comply with the briefing schedule already established in this case. (Dkt. No. 27). The Court further addresses below the Maritime Commission's efforts to raise issues relating to the authority of Defendants to disregard state environmental laws (the proposed Second and Third Causes of Action) when discussing Plaintiffs' proposed amended complaint.

### Georgia Ports Authority's Motion to Intervene

The Georgia Ports Authority has moved to intervene in this action as a defendant, arguing that it satisfies the requirements under FRCP 24(a)(2) for intervention as of right as well as for

permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). The Georgia Ports Authority asserts that it is responsible for funding $198 million of the $652 million cost of SHEP and has specific obligations under the permits issued by DHEC. (Dkt. No. 30-1 at 4). None of the original parties have objected to the Georgia Ports Authority's intervention. It is clear to the Court that the Georgia Ports Authority has claims which have common issues of law or fact with the issue raised in the original complaint sufficient to support permissive intervention. Consequently, the Court grants the Georgia Ports Authority's motion to intervene as a defendant. (Dkt. No. 30). The Georgia Ports Authority shall be subject to the same scheduling order previously entered by the Court. (Dkt. No. 27).

### Plaintiffs' Motion to Amend

Plaintiffs have moved to amend their complaint to add additional claims for declaratory relief relating to the possible assertion by Defendants that the SHEP is exempt from compliance with South Carolina's environmental protection laws. (Dkt. No. 37-1). Specifically, Plaintiffs seek to have this Court declare that the provisions of 33 U.S.C. §§ 1344( r), 1344(t), and 1371(a) do not immunize Defendants from compliance with South Carolina environmental permitting requirements. *Id.* at 13-14.[1]

The granting of a motion to amend, particularly early in litigation, is "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). It is well settled, however, that a motion to amend can be denied if it appears on the face of the complaint that it is legally deficient and the granting of the amendment would be an act of futility. *Steinberg v. Chesterfield County*

---

[1] The Savannah River Maritime Commission also proposed to assert these same claims as an intervenor in its proposed amended complaint, which the Court in an earlier portion of this order denied the Commission the right to do at this time.

*Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). This includes a situation where the proposed amendment is not ripe for adjudication. *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2nd Cir. 1999).

Federal courts are limited under Article III of the United States Constitution to adjudicating actual "cases" and "controversies." This constitutional mandate limits the federal courts from addressing legal issues which are not yet ripe for adjudication. The doctrine of ripeness seeks to avoid the premature adjudication of disputes until a "decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983). A claim is not ripe for disposition if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). In evaluating an issue for ripeness, the court should look to the "fitness of the issue[] for judicial decision" and the "hardship to the parties of withholding court consideration." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

In this matter, Plaintiffs assert that *in the future* Defendants might invoke their alleged right to be immune from South Carolina's environmental permitting statutes and are currently threatening the state with the exercise of that option allegedly as a means of minimizing state regulatory requirements. (Dkt. No. 37 at 6). This legal issue involves one of the fundamental powers of the federal government, the control of the nation's navigable waters, and requires the interpretation of an amendment adopted by Congress in 1977 that requires federal agencies involved with major dredging operations to comply with state environmental laws. *United States v. Rands*, 389 U.S. 121, 122-23 (1967); S. Rep. No. 95-370, at 67-69 (1977); 33 U.S.C. §

1344(t). The 1977 amendment limits any waiver of federal sovereign immunity, however, where state regulation of the environment might interfere with the authority of the federal government to "maintain navigation." 33 U.S.C. §§ 1344(t), 1371(a)(2).

It is notable that at this point Defendants have not asserted the "navigation exemption" or otherwise declared that they are immune from state permitting requirements. (Dkt. No. 41 at 8-10). To the contrary, Defendants applied to DHEC for certain state permits and are actively participating in the appeal challenging the issuance of those permits in the South Carolina Administrative Law Court. They are also actively contesting this lawsuit which alleges that there is an additional permitting requirement under the South Carolina Pollution Control Act that has not been satisfied. The outcome of the Administrative Law Court appeal, the original action in the South Carolina Supreme Court and/or this litigation before the Court may result in Defendants asserting a claim of immunity from state environmental requirements or Defendants may elect to fully comply with state permitting laws. Further factual and legal developments are necessary before this issue may be ripe for adjudication. The Court declines to adjudicate a dispute based upon a contingency (the federal invocation of sovereign immunity) that may never occur.

Therefore, the Court denies Plaintiffs' motion to amend (Dkt. No. 37) at this time *without prejudice* on the basis that the dispute is not ripe for adjudication and the amendment would, therefore, be an act of futility. In the event Defendants in the future assert a claim of immunity from state environmental permitting requirements, Plaintiffs are free to renew their motion to amend and to assert these claims. The Court would then consider such a motion to amend *de novo* based upon any possible change in circumstances.

## Conclusion

The Court hereby grants the Maritime Commission's motion to intervene as a plaintiff (Dkt. No. 22), expressly conditioned on the Commission's claims being limited at this time to those asserted in the original complaint in this action. (Dkt. 1-1). The Court further grants the Georgia Ports Authority's motion to intervene as a defendant. (Dkt. No. 30). Plaintiffs' motion to amend is denied *without prejudice*. (Dkt. No. 37).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

August /Y, 2012
Charleston, South Carolina